**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN GLAVIC, | ) | |
| | ) | CASE NO. 1:05CV2258 |
| Petitioner, | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| DAVID BOBBY, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Alan Glavic ("Glavic"), challenges the constitutionality of his conviction in

the case of *State v. Glavic*, Lake County Common Pleas Case No. 01-CR-58.  Glavic, *pro se*,

filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on

September 26, 2005 with the United States District Court for the Northern District of Ohio.  On

February 3, 2006, Glavic filed an Amended Petition for Writ of Habeas Corpus.  (Doc. No. 13.)

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons

set forth in detail below, the Magistrate Judge recommends Glavic's petitions (Doc. Nos. 1 &

13) be DENIED.

## I.  Procedural Background

**A.**     **Conviction**

The Lake County Grand Jury returned a thirty-one count indictment charging Glavic with

various criminal offenses in violation of the Ohio Revised Code ("R.C.") on May 11, 2001.

(Doc. No. 14, Exh. 1.)  Glavic was indicted on the following charges:

> [O]ne count of engaging in a pattern of corrupt activity, a felony of the first
> degree, in violation of R.C. 2923.32(A)(1) with a forfeiture specification pursuant
> to R.C. 2923.32(B)(3); eleven counts of breaking and entering, felonies of the
> fifth degree, in violation of R.C. 2911.13(A); two counts of theft, felonies of the
> fifth degree, in violation of R.C. 2913.02(A)(1); two counts of tampering with
> evidence, felonies of the third degree, in violation of R.C. 2921.12(A)(1); four
> counts of grand theft, felonies of the fourth degree, in violation of R.C.
> 2913.02(A)(1); one count of misuse of credit cards, a felony of the fifth degree, in
> violation of R.C. 2913.21(B)(2); one count of forgery, a felony of the fifth degree,
> in violation of R.C. 2913.31(A)(1); one count of receiving stolen property, a
> felony of the fifth degree, in violation of R.C. 2913.51(A); one count of grand
> theft of a motor vehicle, a felony of the fourth degree, in violation of R.C.
> 2913.02(A)(1); three counts of vandalism, felonies of the fifth degree, in violation
> of R.C. 2909.05(B)(1)(a); three counts of disrupting public services, felonies of
> the fourth degree, in violation of R.C. 2909.04(A)(1); and one count of possessing
> criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A).

(Doc. No. 14-28, Exh. 23.)

Glavic entered a plea of "not guilty" to all the charges.  The state dismissed one

vandalism charge and two of the breaking and entering charges.  On August 2, 2001, a jury

returned verdicts of guilty to one count of Engaging in a Pattern of Corrupt Activity (R.C. §

2923.32(A)(1)); seven counts of Breaking and Entering (R.C. § 2911.13(A)); four counts of

Theft (R.C. § 2913.029A)(1)); one count of Tampering with Evidence (R.C. § 2921.12(A)(1));

one count of Forgery (R.C. § 2913.31(A)(1)); one count of Receiving Stolen Property (R.C. §

2913.51(A)); two counts of Grand Theft (R.C. § 2913.02(A)(1)); two counts of Vandalism (R.C.

§ 2909.05(B)(1)(a); three counts of Disrupting Public Services (R.C. § 2909.04(A)(1)); and one

2

count of Possessing Criminal Tools (R.C. § 2923.24).  (Doc. No. 14, Exhs. 4 & 5.)

A sentencing hearing was held on August 30, 2001, and Glavic was sentenced to a total prison term of fifteen years, which included nine years in prison for engaging in a pattern of corrupt activity that was to be served consecutively to all the other prison terms in the case. (Doc. No. 14, Exh. 10.)  Glavic also was ordered to pay all court costs and all costs of prosecution in an amount certified by the Lake County Clerk of Courts.  (Doc. No. 14, Exh. 10.)

**B.      Direct Appeal**

Glavic timely appealed the trial court's judgment and sentence to the Ohio Court of Appeals.  (Doc. No. 14, Exhs. 11 & 12.)  On May, 21, 2002, Glavic filed his brief in support. (Doc. No. 14, Exh. 14.)  On February 24, 2003, Glavic filed a supplemental brief through his new appointed counsel.  The Court of Appeals affirmed the trial court's judgment.  (Doc. No. 14, Exh. 23.)

Glavic appealed to the Ohio Supreme Court.  (Doc. No. 14, Exhs. 34 & 35.)  The Ohio Supreme Court accepted Glavic's appeal only with respect to his claim that the trial court erred by assessing costs against an indigent defendant and stayed his appeal pending the outcome of *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393.  (Doc. No. 14, Exh. 37.) On March 16, 2005, the Ohio Supreme Court affirmed the judgment of the Court of Appeals. (Doc. No. 14, Exh. 38.)

**C.      Application to Reopen Direct Appeal**

On February 23, 2004, Glavic filed in the Court of Appeals an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) ("Rule 26(B)").  (Doc. No. 14, Exh. 26.)  The Court of Appeals denied Glavic's application.  (Doc. No. 14, Exh. 27.)

3

Glavic appealed to the Ohio Supreme Court. (Doc. No. 14, Exhs. 30 & 31.) The Ohio Supreme Court dismissed Glavic's appeal as not involving any substantial constitutional question. (Doc. No. 14, Exhs. 32 & 33.)

**D.     Petition to Vacate or Set Aside Sentence**

Glavic filed in the trial court a petition to vacate or set aside the sentence. (Doc. No. 14, Exh. 40.) Subsequently, Glavic filed a motion to amend his petition. (Doc. No. 14, Exh. 41.) The trial court denied Glavic's petition. (Doc. No. 14, Exh. 43.)

Glavic filed a motion for reconsideration with the trial court. (Doc. No. 14, Exh. 44.) The trial court denied Glavic's motion for reconsideration. (Doc. No. 14, Exh. 45.)

Glavic also appealed to the Court of Appeals. (Doc. No. 14, Exh. 47.) Thereafter, Glavic sought to withdraw his appeal. (Doc. No. 14, Exh. 48.) The Court of Appeals dismissed Glavic's appeal at his request. (Doc. No. 14, Exh. 49.)

**E.     Second Application to Reopen Direct Appeal**

On June 8, 2005, Glavic filed a delayed second application for reopening pursuant to Rule 26(B) with the Court of Appeals. (Doc. No. 14, Exh. 51.) The appellate court denied Glavic's petition as untimely. (Doc. No. 14, Exh. 52.)

Glavic appealed to the Ohio Supreme Court. (Doc. No. 14, Exh. 55.) The Ohio Supreme Court dismissed Glavic's appeal as not involving any substantial constitutional question. (Doc. No. 14, Exh. 56.)

**F.     Federal Habeas Petition**

On September 26, 2005, Glavic filed a Petition for Writ of Habeas Corpus. (Doc. No. 1.) The asserted grounds for relief are as follows:

4

Ground One: Appellant was denied due process of law when the state named unindicted co-defendants in his indictment.

Ground Two: The Trial Court erred in assessing cost to an indigent defendant.

Ground Three: There was insufficient evidence to convict Petitioner under Ohio R.C. § 2923.32, because the state failed to prove an enterprise separate and distinct from the pattern from the pattern of corrupt activity, thereby violating U.S. Const. Amend. V; VI; IX; and XIV.

Ground Four: The conduct of trial and appellate counsel amounted to ineffective assistance of counsel.

Ground Five: State prosecutors improperly withheld exculpatory evidence thereby violating Petitioner's Due Process rights under U.S. Const. Amend XIV.

(Docs. No. 1.)

On February 3, 2006, Glavic filed an Amended Petition for Writ of Habeas Corpus asserting additional and/or amended grounds for relief.  (Doc. No. 13.)  Although Glavic neither sought nor was granted leave to amend his petition, his Amended Petition was filed before the Return of Writ.  The asserted grounds for relief are as follows:

Amended Ground One: Petitioner's trial attorney failed to present a competent and substantial defense and acted as an organ of the state.

Amended Ground Two: The prosecutor's actions amounted to prosecutorial misconduct and amounted to "outrageous government conduct."

Amended Ground Three: The trial court lacked subject matter jurisdiction to prosecute Petitioner for engaging in a pattern of corrupt activity.

Amended Ground Four: Petitioner was prohibited by the state from asserting the defenses of actual and legal innocence.

5

Glavic's Amended Petition rehashes some the claims in his Initial Petition while adding

new claims.  The Court will consider Glavic's Amended Petition as Supplementing rather than

replacing his original petition.

## II.  Summary of the Facts

The Ohio Court of Appeals summarized the facts underlying Glavic's conviction as

follows:[1]

> From late December 2000 through March 2001, [Glavic] engaged in a
> string of breaking and entering along with other criminal conduct in Lake County
> and other surrounding counties.  The testimony revealed that large quantities of
> cigarettes, cigarette rolling papers, audio equipment, and pornographic magazines
> were stolen from area stores.  Other stolen items included cash and, in one
> situation, a credit card.  Evidence was also presented that [Glavic] used the credit
> card to purchase additional audio equipment and pay for repairs to his
> automobile.  The testimony further revealed that at some of the stores, telephone
> wires were cut outside and that rocks or bricks were thrown through glass
> windows or doors to gain entry into the stores.  [Glavic] admitted some
> involvement to the police, but he claimed that he did not participate in a criminal
> business enterprise.
>
> Detective Barry Witt ("Detective Witt") of the city of Willowick Police
> Department testified that he investigated break-ins at a couple stores in
> Willowick.  He obtained information from a confidential informant that Shawn
> Dercole ("Dercole") had "hundreds of cartons of name brand cigarettes for sale."
> A search warrant was executed for Dercole's apartment and several items were
> seized, which included pieces of paper with different phone numbers and
> addresses, a price list of cigarettes and the number of cigarettes sold by Dercole,
> numerous packages of cigarette rolling paper, several pornographic magazines,
> and cartons of cigarettes.
>
> Peggy Robinson ("Robinson") took the stand and related that she lived in
> Dercole's apartment building and that Dercole approached her about whether she
> was a smoker.  When she informed him that she was a smoker, he inquired as to
> what brand she smoked.  Robinson told him that she smoked Newport 100's, so
> Dercole asked her if she was interested in purchasing a carton of Newport
> cigarettes for $15.  Robinson declined the offer.
>
> During the trial, Dercole related that he and [Glavic] were friends and that

---

[1]  Factual determinations by state courts are entitled to a presumption of correctness.
*See, e.g., House v. Bell,* 283 F.3d 37 (6th Cir. 2002).

6

he felt bad about testifying against [Glavic].  (Note 1)

---------------------------------------Footnote 1-----------------------------------------
Dercole was charged for his involvement in selling the cigarettes,
but he was sentenced prior to giving his testimony in this matter.
------------------------------------End Footnote-------------------------------------

Dercole confirmed that he was not a smoker.  He further revealed that [Glavic]
visited his apartment numerous times in early January 2001, and brought a
number of cigarette cartons, pornographic materials, and rolling papers with him.
According to Dercole, [Glavic] told him that he had a buyer for the cigarettes, but
the buyer backed out, so Dercole volunteered to sell them.  As a result, Dercole
was to retain a portion of the proceeds from any sale that occurred and the
remainder of the money was to be given to [Glavic].

There was also testimony from Sergeant Anthony Iliano ("Sergeant
Iliano") of the Lake County Sheriff's Department that he had still photographs
printed from the VCR surveillance tape of the Speedway in Perry Township.  The
camera was positioned showing a view of the front door.  The photos were
enlarged and showed an individual breaking the window with a shovel.  Sergeant
Iliano opined that after viewing the photos, the individual contained in them was
[Glavic].  Furthermore, Sergeant Iliano testified that the shoe prints at the crime
scenes matched a pair of shoes that was obtained from [Glavic's] apartment.

Joseph Walters ("Walters"), a fellow inmate of [Glavic's] at the Lake
County Jail, testified that he had known [Glavic] for six years.  He stated that
while he and [Glavic] were in jail, [Glavic] had told him about "some
merchandise that was from a business that he needed to get rid of and [Glavic
asked Walters] where to get rid of some items."  Specifically, the merchandise
consisted of stereo equipment and cigarettes. [Glavic] explained to Walters the
manner in which he had acquired the items.  Specifically, [Glavic] told Walters
that he "cut the phone lines and broke the back door in."  According to Walters,
[Glavic] also revealed that "he threw stuff into the place to make sure the alarm
didn't trip, and that they loaded stuff into a van."

Walters mentioned that [Glavic] told him about an individual by the name
of Lance Watson ("Watson").  Walters' testimony revealed that Watson helped
[Glavic] make bail by selling some sound equipment and cigarettes. [Glavic]
informed Walters that Watson "was his partner and they [had] been doing
numerous jobs around the area."  [Glavic] told Walters that he and Watson
attempted to get into a safe at a gas station, but they were unsuccessful.
According to Watson, [Glavic] indicated that some of the merchandise from the
break-ins was located at his Eastlake residence.

At the close of the state's case-in-chief, [Glavic] moved for a Crim.R. 29
acquittal, which was overruled. [Glavic] then presented the testimony of his
father.  At the close of [Glavic's] case, the motion was renewed and again
overruled.

(Doc. No. 14-28, Exh. 23.)

### III.  Procedural Default

Respondent asserts that Glavic has procedurally defaulted on the following claims: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) the state trial court lacked  subject matter jurisdiction over the Ohio RICO charge as contained in amended ground three; and (4) failure to assert defenses of actual or legal innocence.[2]

### A.    Standard

Procedural default occurs when the petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state law ground exists for upholding the conviction or sentence.  *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991).  The denial of an appeal for non-compliance with the time limit prescribed by the state is an adequate and independent state ground.  *Id.* at 751.

The procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Specifically, the Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure

_____

[2]  Glavic's ineffective assistance of trial counsel claim is listed as ground four in his initial complaint and as ground one in his amended complaint.  His prosecutorial misconduct claim is listed as ground five in his initial complaint and as ground two in his amended complaint.  His lack of subject matter jurisdiction is listed as ground three in his amended complaint.  His actual or legal innocence claim is listed as ground four in his amended complaint.

8

to observe a state procedural rule.  First, the court must determine whether there is a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Id.* at 138.  Second, the Court must decide whether the state courts actually enforced its procedural sanction.  *Id*.  Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim.  Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling.  *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  Fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")

Under the second prong of the *Maupin* analysis, the court must actually rely on the procedural bar as an independent basis for its disposition of the case.  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (The last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply). Further, review by a state court of an otherwise procedurally defaulted claim to determine

9

whether the error, if any, constituted a manifest miscarriage of justice does not revive the defaulted claim for purposes of federal habeas corpus review.  *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) ("manifest injustice" review by state court of defaulted claim does not constitute waiver of the default); *see also Seymour v. Walker*, 224 F.3d, 542, 557 (6th Cir. 2000) (Court of Appeals' plain error review does not constitute waiver of state procedural rules).

**B.        Ineffective Assistance of Trial Counsel**

In his fourth ground for relief in his original petition and first ground for relief in his amended petition, Glavic asserts that he was denied effective assistance of counsel.  (Doc. No. 1-2 at 8-9; 13-1 at 3; Doc. No. 15.)  Though his arguments are not entirely clear, Glavic's argument appear to be based on allegations that his trial counsel failed to inform him of the strategies and defenses that would be used at trial, disregarded defenses that Glavic wished to raise, and failed to reasonably investigate potential witnesses and rebut damaging testimony.  *Id*. Respondent asserts that this ground for relief is procedurally defaulted because it was not raised on direct appeal, and is now barred under the doctrine of *res judicata*.  (Doc. No. 14-1 at 23.)

Under Ohio law, all claims that were known or should have been known by the defendant at the time of trial or direct appeal must be raised on direct appeal from the judgment of conviction.  Ohio provides an avenue of relief, namely post-conviction review, for those claims that were unknown, or could not reasonably have been known, to the defendant until after the judgment of conviction.  Ohio's post-conviction relief statute, O.R.C. § 2953.21, provides in pertinent part:

> Any person who has been convicted of a criminal offense or adjudicated a
> delinquent child and who claims that there was such a denial or infringement of
> the person's rights as to render the judgment void or voidable under the Ohio
> Constitution or the Constitution of the United States . . . may file a petition in the

10

court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.  The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

This statute has long been interpreted to bar post-conviction consideration of any issue that was fully litigated before the judgment of conviction or on direct appeal from that judgment, or of any issue that could have been fully litigated before judgment of conviction *or on direct appeal* but was not.  *See State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 at syllabus ¶7 (Ohio 1967); *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (Ohio Ct. App. 1994) (emphasis added).  The *Perry* court stated:

> Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

226 N.E.2d at syllabus ¶9.

*Res judicata* applies to constitutional claims that could have been raised in a direct appeal, as well as to constitutional claims that could have been raised in any post conviction proceeding.  *See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998), *citing State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that post-conviction relief is not available by virtue of the doctrine of *res judicata* to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).  In such a situation, a petitioner is considered to have waived the claim for federal habeas purposes "unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

11

Glavic's argument of ineffective assistance of trial counsel was not raised on direct appeal.[3] Glavic first raised an ineffective assistance of trial counsel in his application to vacate or set aside his sentence.[4] (Doc. No. 14, Exh. 40.) The state court found that this alleged error could have been raised on direct appeal and was barred by *res judicata*. (Doc. No. 14-48, Exh. 43.) Because Glavic failed to raise his alleged constitutional violation on direct appeal, which results in a *res judicata* bar, he has procedurally defaulted on his claim

Finally, Glavic must demonstrate "cause" for failure to follow the procedural rule and actual prejudice stemming from the alleged constitutional error. Glavic, who was represented by different counsel on direct appeal than at trial, has not presented any argument as to why he failed to raise this issue on direct appeal and has failed to proffer a cause for his default. As Glavic's ineffective assistance of trial counsel claim is procedurally defaulted and Glavic has not shown cause or prejudice from the procedural default, this claim should be dismissed.

## C.     Prosecutorial Misconduct

Glavic alleges that his due process rights were violated because of prosecutorial

---

[3] Glavic's assigned the following errors in his briefs to the state appellate court: (1) his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence; (2) the trial court erred when it ordered consecutive sentences; and (3) the trial court erred when it assessed court costs to Glavic after finding he was indigent; (4) the trial court abused its discretion by denying his motions to sever the charges; (5) his convictions for grand theft and breaking and entering were not supported by sufficient evidence; (6) his conviction for grand theft and breaking and entering were against the manifest weight of the evidence. (Doc. No. 14, Exhs. 14 & 16.)

[4] Glavic attempted to raise ineffective assistance of trial counsel and prosecutorial misconduct claims in his Rule 26(B) application to re-open. Rule 26(B), however, allows a criminal defendant to "apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of *appellate counsel*" and not for ineffective assistance of trial counsel. (emphasis added). Glavic's ineffective assistance of appellate counsel claim is discussed in Part IV-A, *infra*.

misconduct.  Specifically, Glavic argues that the prosecutor: (1) withheld exculpatory evidence in the form of a videotaped deposition; and (2) engaged in "outrageous government conduct" by suborning perjury.  (Doc. Nos. 1 and 13.)  Respondent asserts that this ground for relief is procedurally defaulted because it was not raised on direct appeal, and is now barred under the doctrine of *res judicata*.  (Doc. No. 14-1 at 23.)

As discussed in the previous section (*see* III, B, *supra*), Ohio law requires a defendant-appellant to assert all claims that were known to him on direct appeal.  Ohio allows post-conviction review only for claims that were unknown or could not reasonably have been known to a defendant until *after* the judgment of conviction.  Ohio's post-conviction relief statute, O.R.C. § 2953.21 has long been interpreted to bar any issue that could have been fully litigated on direct appeal.  *See, e.g., Perry*, 226 N.E.2d at syllabus ¶7.  Constitutional claims that could have been raised in a direct appeal, as well as to constitutional claims that could have been raised in any post conviction proceeding, are barred by *res judicata* unless Glavic can demonstrate cause for the procedural default as well as actual prejudice.  *See, e.g., Norris*, 146 F.3d at 332; *Rust*, 17 F.3d at 160.

Glavic's claim of prosecutorial misconduct was not raised on direct appeal.  Glavic first raised a prosecutorial misconduct claim in his petition to vacate or set aside his sentence by claiming the state refused to hand over crucial evidence.[5]  (Doc. No. 14, Exh. 40.)  The trial court found that "Glavic failed to show why these claims were not brought up on direct appeal.  These claims are barred by *res judicata*."  (Doc. No. 14-48, Exh. 43.)  The court further found

---

[5]  Glavic indirectly raised a prosecutorial misconduct claim in his application to re-open his direct appeal pursuant to Rule 26(B), which deals with ineffective assistance of appellate counsel.  (Doc. No. 14-31, Exh. 26.)

that even without these defects, Glavic has not presented any evidence to substantiate his conclusory claims.  *Id*.

Further, Glavic has not offered any reason as to why he failed to raise this issue on direct appeal and has accordingly failed to present cause for his default.  As Glavic's claims alleging prosecutorial misconduct are procedurally defaulted and Glavic has not shown cause or prejudice excusing the procedural default, these claims should be dismissed.

**D.      Petitioner was Prohibited From Asserting Defenses of Actual and Legal Innocence**

Glavic's claim for relief as contained in Amended Ground Four is not clearly articulated. Glavic argues that his trial counsel refused to proffer legal and actual innocence defenses and that the prosecution twisted the facts "out of misconduct."  (Doc. No. 13-1.)  Respondent argues that this claim is procedurally defaulted.  (Doc. No. 14-1 at 23.)  This claim amounts to nothing more than an ineffective assistance of trial counsel and/or prosecutorial misconduct claim.  As discussed above, these claims were procedurally defaulted.  Glavic further asserts that the state appellate court and the Ohio Supreme Court "should have allowed an evidentiary hearing to determine and resolve the facts ..."  Glavic's assertion that an evidentiary hearing should have been held at the appellate level is unreasonable for several reasons, including the fact that Glavic did not raise these issues on appeal.  (Doc. No. 14, Exhs. 14 & 16.)

As Amended Ground Four merely rehashes or supplements other grounds for relief that have been determined to be procedurally defaulted, this claim should likewise be denied.

### IV.  Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

14

of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Patterson

filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Federal courts are bound by a state court's determination of a petitioner's claims, unless

the decision by the state court involved an unreasonable application of clearly established federal

law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998).  In *Williams v. Taylor*, 529 U.S. 362,

411 (2000), the Supreme Court held that "a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.  Rather, that application must

also be unreasonable."  Stated differently, "a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  The Court

noted that the term "unreasonable" is "no doubt difficult to define," but did not expound on the

word's meaning in this context, instead stating that "it is a common term in the legal world, and,

accordingly, federal judges are familiar with its meaning."  *Id*. at 410.  The Sixth Circuit

interprets the *Williams* test to mean if a court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one."  *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

**A.      Ineffective Assistance of Appellate Counsel**

Glavic asserts that he was deprived of effective assistance of appellate counsel because appellate counsel failed to raise the trial counsel's alleged ineffective assistance as an assignment of error.  (Doc. No. 1.)  Respondent argues that such a claim lacks merit, but does not address Glavic's claim on the merits.  (Doc. No. 14-1 at 26-29.)

**1.      Standard for Ineffective Assistance of Appellate Counsel**

To establish ineffective assistance of appellate counsel, the petitioner must show deficient performance of appellate counsel that is prejudicial to the defendant under the *Strickland* test.  *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).  Counsel must provide reasonable professional judgment in presenting the appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel.  *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).

"[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S.

16

745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are

properly left to the sound professional judgment of counsel).  Failure of appellate counsel "to

raise an issue on appeal is ineffective assistance only if there is a reasonable probability that

inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405

F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

     **2.**       **Failure to Raise Ineffective Assistance of Trial Counsel on Appeal**

     Glavic's claim that he was denied effective assistance of appellate counsel is based solely

on his argument that appellate counsel failed to raise his trial counsel's allegedly deficient

performance upon appeal.  (Doc. No. 1 at 8-9.)  It is Glavic's burden to show that his appellate

counsel was constitutionally deficient and that there was a reasonable probability that raising the

alleged error would have resulted in a different outcome on appeal.

     Glavic's dissatisfaction with trial counsel's performance rests on several alleged

deficiencies: (1) failure "to comprehend Ohio's RICO statute [sic] as it was applied in this case;"

(2) failing to object to or refute the allegedly hearsay testimony of Joseph Walters; and (3)

failing to request the statement of Lance Watson during discovery.  (Doc. No. 1-2 at 9.)

     The statute Glavic refers to as Ohio's RICO statute is Ohio R.C. § 2923.32.  *See*

*State v. Schlosser*, 79 Ohio St. 3d 329, 333, 681 N.E.2d 911 (Ohio 1997) (referring to § 2923.32

as the Ohio RICO statute).   In Count I of the indictment, Glavic was charged under Ohio R.C. §

2923.32(A)(1): " No person employed by, or associated with, any enterprise shall conduct or

participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt

activity or the collection of an unlawful debt."  To establish liability under Ohio R.C. §

2923.32(A)(1), it is necessary to show that a defendant committed two or more predicate crimes

17

before the acts amount to "racketeering activity."  *Roe v. Franklin County*, 109 Ohio App. 3d 772, 782, 673 N.E.2d 172 (Ohio Ct. App. 1996).  Although not entirely clear in his initial petition, Glavic appears to believe that the prosecution did not prove that he engaged in two predicate acts and, in a conclusory manner, declares that his counsel was unaware of this requirement. (Doc. Nos. 1-2; 13-1.)  Glavic has not cited any evidence of record to substantiate this allegation.  Furthermore, as discussed in Part C, *infra*, there was sufficient evidence presented to uphold a conviction on this charge, as there was evidence of numerous breaking and enterings by Glavic.  The Court cannot find that appellate counsel's failure to raise an error based on an unsubstantiated allegation was constitutionally deficient or that it was prejudicial to the extent that it would have resulted in a different outcome on appeal.

Glavic also avers that his trial counsel was ineffective for failing to object to or refute the allegedly hearsay testimony of Joseph Walters ("Walters").  The alleged hearsay is testimony by Walters as to statements made by Glavic who was a "party-opponent" in this case.  It is well-established that the statement of a party-opponent does not constitute hearsay.  Ohio Evid. R. 801(D)(2) states that "a statement is not hearsay if [the statement is an] [a]dmission by party-opponent [where] [t]he statement is offered against a party and is ... his own statement ...."  In a  similar Ohio case, a court found the testimony of a defendant's cell mate admissible against the defendant under Ohio Evid. R. 801(D)(2) as to the incriminating statement made by the defendant to the cell mate.  *See State v. Brumley*, 1996 Ohio App. LEXIS 1390 (Ohio Ct. App. 1996).  In *State v. Czajka*, 101 Ohio App. 3d 564, 576 (Ohio Ct. App. 1995), the appellant argued that he was denied effective assistance of counsel because his counsel failed to object to twenty allegedly hearsay statements.  However, because the statements were party admissions

under Ohio Evid. R. 801(D)(2), the *Czajka* court found that "counsel's failure to object was neither deficient nor prejudicial since it echoed appellant's own statements, nor was appellant denied the effective assistance of counsel."  Glavic's argument is identical to the appellant in *Czajka*, and the Court finds no error in counsel's failure to object to statements of Walters, as they do not constitute hearsay.  As such, Glavic's argument – that his appellate counsel erred by failing to assign as error his trial counsel's failure to object to alleged hearsay – is not well taken. Under these circumstances, Glavic's appellate counsel was neither deficient, nor did any prejudice ensue.

Lastly, Glavic alleges his appellate counsel's performance was constitutionally deficient because he failed to raise as error the alleged failure of trial counsel to request the statement of Lance Watson ("Watson") during discovery or to view Watson's video-taped deposition.  (Doc. No. 1-2 at 9.)  Glavic has attached what appears to be a notarized statement from Watson to his Petition.  (Doc. No. 1, Exh. E.)  Therein, Watson states that he has "never commited [sic] any crimes, been any part of any illegal activity concerning ... Glavic nor have any knowledge concerning ... Glavic['s] illegal activity 'if any.'" (Doc. No. 1, Exh. E.)  Neither party has apprised the Court of the contents of the video-taped deposition.  Watson testified at trial, but solely about a relatively routine traffic stop where a police officer pulled over Watson and Glavic, the driver, in a van.  (Tr. 76-85.)  The traffic stop resulted in a search of the vehicle but no arrests were made at the time.  (Tr. 76-85.)  Watson was not asked nor did he testify with respect to the issue of whether he participated in the crimes of which Glavic was accused or whether he had knowledge of the alleged crimes.  (Tr. 76-85.)  Assuming arguendo that Glavic's assertion is correct – that his trial attorney never requested or watched the taped statement of

19

Watson – Glavic's claim would still fail.[6]  To prevail, Glavic is required to show that appellate counsel's failure to raise the issue on appeal resulted in ineffective assistance, which requires a showing that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *Howard*, 405 F.3d at 485, *citing Greer*, 264 F.3d 663.  Based on the facts of record, the Court declines to find that there is a reasonable probability that inclusion of this issue by appellate counsel would have changed the results of the appeal.

First, assuming that Watson's video-taped deposition is consistent with his notarized statement, Glavic had the opportunity to elicit such testimony during trial on either cross or direct examination of Watson.  In addition, there is significant testimony by numerous other witnesses that support Glavic's conviction.  (*See* Part C, *infra*.)  Therefore, even if Watson's testimony would have rebutted the incriminating testimony of Walters, there is not a reasonable probability that Glavic's appeal would have been affected.  The testimony can reasonably support a finding that Glavic and Shawn Dercole engaged in a criminal enterprise, rendering Watson's participation non-essential to Glavic's conviction under Ohio's RICO statute.  Further, Glavic's trial counsel utilized Watson's testimony about the traffic stop to argue that no probable cause existed for the search of the vehicle and that no consent to a search was authorized.  (Tr. 76-85.)  Had trial counsel asked Watson about his alleged participation in the crimes, Watson

---

[6]  The evidence submitted on this issues is as follows: (1) an executed sworn affidavit by an assistant prosecuting attorney stating that he hand delivered the said videotape of Watson's interview to Glavic's trial counsel on July 3, 2001; (2) an affidavit of a public defender who assisted Glavic's trial counsel stating that he did not remember seeing the videotape; (3) an affidavit from Glavic's mother relating a telephone conversation with Glavic's trial counsel during which trial counsel allegedly denied ever receiving the videotape; and (4) a notarized statement from Watson date May 2001 in which he denies having knowledge of or participating in any crimes allegedly committed by Glavic.  (Doc. No. 1, Exhs. B, C, D, and E.)

may have invoked his Fifth Amendment rights and frustrated trial counsel's strategy to exclude the fruits of the vehicle's search.[7]  Trial counsel's performance was not so deficient and prejudicial that it caused Glavic "to lose what he otherwise would probably have won" and the representation was not "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

As there is no merit in Glavic's argument that his trial counsel's performance amounted to a deprivation of his right to counsel, Glavic is unable to demonstrate that his appellate counsel's performance was constitutionally deficient for failing to raise this issue on appeal. Where an appellate counsel fails to raise an issue on appeal that is without merit, prejudice cannot reasonably be deemed to result from such a failure.  Therefore, Glavic's ineffective assistance of appellate counsel argument is not well taken.

**B.      Claims Not Cognizable**

Respondent asserts that several of Glavic's claims are not cognizable for habeas corpus review.  (Doc. No. 14-1 at 13-17.)  Specifically, Respondent identifies the naming of an unindicted co-conspirator, the assessment of costs against an indigent defendant, and the trial court's subject matter jurisdiction over the Ohio RICO charge as claims falling into this category.  Respondent's argument is based on its assertion that none of these claims involve recognized federal or Constitutional rights.

A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v.*

---

[7]  Trial counsel moved the trial court to suppress the police officer's testimony concerning the gloves, wire cutters, and other tools observed during the search.  (Tr. 86.)

*McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  However, if the error is so egregious as to amount to a denial of fundamental fairness or of other federal rights, the federal court may grant the habeas petition.  *See id.*  A perceived error of state law is characterized by the petitioner's reliance on state statutory or case law to assert his claim.  *See Estelle*, 502 U.S. at 68.  Typically, "alleged errors of state evidentiary rules are not cognizable in habeas corpus cases," unless the improper application of the state law violates the petitioner's constitutional rights.  *Rimmer-Rey v. Foltz*, 917 F.2d 25, 1990 WL 163265, *2 (6th Cir. 1990) (unpublished opinion); *see also Moore v. Tate,* 882 F.2d 1107, 1109 (6th Cir. 1989); *Shakoor v. Collins*, 63 F. Supp. 2d 858, 864-865 (N.D. Ohio 1999) ("a federal habeas court does not act as an additional appellate court to review state law and procedure, and that federal habeas courts may reverse state court convictions only when there has been a constitutional error in the state court proceedings, or an error in state law 'so egregious as to deny fundamental fairness in the trial process.'") (citations omitted).

     **1.**      **Denial of Due Process**

     Glavic alleges that he was denied due process of law when the state named a co-conspirator, Lance Watson, in Glavic's indictment but then failed to indict Watson.  Respondent avers that this claim is not cognizable for federal habeas corpus review because there is no "federal constitutional right to an indictment."  (Doc. No. 14-1 at 15-16.)

     "An indictment is generally deemed sufficient 'if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense.'"  *United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001), *quoting United States v.*

22

*Monus*, 128 F.3d 376, 388 (6th Cir.1997). As the purpose of an indictment is to notify a defendant of the charges against him and to prevent prosecutions that would result in double jeopardy, courts are "guided by two factors: first, whether the indictment 'contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and second, [whether it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Id*.; *see also Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Heller*, 579 F.2d 990, 998-999 (6th Cir. 1978). Glavic, however, has not argued that his indictment was deficient in this respect.

Rather, Glavic argues that his due process rights were violated because an alleged co-conspirator was named in the criminal indictment but was never actually indicted. He relies on *U.S. v. Briggs*, 514 F.2d 794 (5th Cir. 1975) to support his argument. However, *Briggs* is inapposite. In *Briggs*, appellants, unindicted conspirators, sought to have their names removed from a criminal indictment. *Id*. The *Briggs* court vacated the trial court's decision and instructed the clerk to expunge the record because appellants had standing to challenge the inclusion of their names in the indictment. *Id*. The court noted that appellants suffer harm from being referenced in an indictment, have no way of responding to the allegations, and the acquittal of the indicted conspirators did not ameliorate the harm. *Id*. Glavic lacks standing to assert that Watson's due process rights were violated. *See, e.g., U.S. v. Hansen*, 422 F. Supp. 430, 436 (E.D. Wis. 1976) (Court denied defendants' motions to expunge an unindicted co-conspirator from the indictment, because the co-conspirator was granted immunity from prosecution, was expected to testify at the trial, and the named defendants were without standing to raise a challenge on behalf of the unindicted co-conspirator.") The other case cited by Glavic

23

is similarly inapplicable. *See Application of Jordan*, 439 F. Supp. 199, 202 (S.D. W. Va. 1977) (following ruling of *Briggs*). In fact, the court in *Jordan* expressly noted that "[t]he rights preserved herein are ***preserved for the unindicted co-conspirator alone***. Thus, a defendant, properly indicted in an indictment which may name others as unindicted co-conspirators, has no standing to question that practice, no benefit accruing from it, and no basis for alleging prejudice attributed to it." *Id*. at n. 11 (emphasis added).

The federal case law cited by Glavic is inapplicable, and he has not cited any other applicable law. In addition he has not made any other argument and does not allege that his indictment was deficient in any other respect. Therefore, Glavic's due process claim is not cognizable upon habeas review. As Glavic has not shown that his due process rights were violated – as opposed to the rights of an unindicted co-conspirator – his claim should be dismissed.

### 2.      Assessment of Costs

Glavic alleges that the trial court erred by assessing costs against him as an indigent defendant. (Doc. No. 1.) Respondent avers that this claim is not cognizable for federal habeas corpus review because the assessment is based exclusively on the interpretation of Ohio statute and does not implicate federal rights. (Doc. No. 14-1 at 16-17.)

Tellingly, Glavic relies solely on Ohio statutory law with respect to this claim and argues that one provision of the Ohio Revised Code should prevail over another provision. (Doc. No. 1.) Glavic's claim was actually accepted for review by the Ohio Supreme Court, as it was considering a similar argument at the same time. (Doc. No. 14, Exh. 37.) However, the Ohio Supreme Court ruled that "[a] trial court may assess court costs against an indigent defendant

24

convicted of a felony as part of the sentence." *State v. White*, 103 Ohio St. 3d 580, 2004-Ohio-

5989, 817 N.E.2d 393, at ¶1 of the syllabus (Ohio 2004).  On habeas review, it is not the Court's

function to review state law and procedure or to usurp the Ohio Supreme Court's role as the final

arbiter of Ohio law.  Furthermore, this rule does not violate any of Glavic's  federal rights nor

does its application deprive Glavic of fundamental fairness.

As Glavic has not alleged that the assessment of costs as part of his sentence violated the

Constitution, laws, or treaties of the United States, his claim should be dismissed.

### 3.        Lack of Subject Matter Jurisdiction

Glavic alleges that the trial court lacked subject matter jurisdiction for the charge that he

engaged in a pattern of corrupt activity.[8]  (Doc. No. 13.)  Respondent avers that this claim is not

cognizable for federal habeas corpus review because it revolves solely around an issue of state

law.  (Doc. No. 14-1 at 17.)

The basis of Glavic's argument is unclear.  Glavic appears to argue that no indictment

was ever issued with respect to the charge that he engaged in a pattern of corrupt activity.  (Doc.

No. 1.)  However, Count One of the indictment issued by the Lake County Grand Jury

specifically identifies a charge of engaging in a pattern of corrupt activity in violation of Ohio

R.C. § 2923.32(A)(1).  (Doc. No. 14-2, Exh. 1.)  Glavic also finds some impropriety in the

alleged fact that criminal complaints against him originated in different cities and/or counties,

(Doc. No.1.)  Ohio R.C. § 2901.11 *et seq*. establishes jurisdiction and venue in criminal

_____

[8]  Glavic intermingles arguments under this heading that appear to belong more
appropriately under his claims of prosecutorial misconduct and/or ineffective assistance of trial
counsel.  These arguments will not be addressed here as these claims have been procedurally
defaulted. (*See* Part III, *supra*.)

proceedings. The proper jurisdiction or venue within the state of Ohio is purely a question of state law and the claim is not cognizable before this Court. If any error occurred in the application of state law, this Court can only overturn his conviction if the error was so egregious as to deny Glavic the fundamental fairness of the trial process. Glavic has not presented any argument as to how his trial and conviction were deprived of fundamental fairness.

As Glavic has not alleged that there was a violation of the Constitution, laws, or treaties of the United States, his claim should be dismissed.

**C.       Insufficient Evidence**

In ground three of his Petition, Glavic alleges that his conviction for engaging in a pattern of corrupt activity in violation of Ohio R.C. § 2923.32(A)(1) was not supported by sufficient evidence. (Doc. No. 1.) Respondent avers that Glavic's claim was not "fairly presented" because Glavic, on direct appeal, did not challenge the *sufficiency* of the evidence supporting his conviction for engaging in a pattern of corrupt activity.[9] (Doc. No. 14, Exh. 14.) Rather, Glavic argued that his conviction for engaging in a pattern of corrupt activity was against the *manifest weight* of the evidence. (Doc. No. 14, Exh. 14.)

Though Glavic challenged his Ohio RICO conviction before both the court of appeals and the Ohio Supreme Court on the grounds that it was against the manifest weight of the

---

[9]   Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not "fairly presented" to the state courts. *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). The Sixth Circuit has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* at 326; *see also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000).

evidence, the Court rejects the Respondent's argument.  There are two different standards for determining whether a defendant was convicted against the manifest weight of the evidence and whether a defendant was convicted by insufficient evidence.[10]  The standard for determining manifest weight is broader than the standard for determining sufficiency of the evidence.  A court that finds a conviction survives the broader manifest weight standard must necessarily find that sufficient evidence also existed for the defendant's conviction.

Although the Court declines to dismiss Glavic's complaint on the grounds asserted by Respondent, Glavic's claim is reviewed solely as an "insufficient evidence" claim because manifest weight claims are not cognizable in federal habeas review.  See, e.g., *Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006) (slip opinion) ( a claim that a petitioner's conviction is against the manifest weight of the evidence cannot be considered by a federal court upon habeas corpus review.)

In reviewing a conviction for sufficiency of the evidence, this Court must determine

---

[10]  Under Ohio law, conviction against the manifest weight of the evidence and conviction by insufficient evidence are subject to two different legal standards:

> Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. Here, the test [for a conviction against the manifest weight of the evidence] is much broader than that applicable to challenges to the sufficiency of the evidence. '* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' This review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact.  Thus, the power to reverse must be exercised with caution and only in the rare case where the evidence weighs heavily against conviction.

*Ohio v. Banks*, 605 N.E.2d 219, 224-25 (Ohio Ct. App. 1992).

27

"whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979) (footnote omitted).  In making this determination, a court does "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001) (internal quotation and citation omitted).  Rather, a court views "the evidence in the light most favorable to the prosecution" and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The crime of engaging in a pattern of corrupt activity conviction under Ohio R.C. § 2932.32(A)(1) is defined as follows: "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."  An enterprise is broadly defined as "any individual, sole proprietorship, partnership ... or group of persons associated in fact" and includes illicit enterprises.  *See* Ohio R.C. § 2923.31(C).  It is necessary to show that a defendant committed two or more predicate crimes before the acts amount to a pattern of corrupt activity, which must be related to the affairs of the same enterprise.  *See Roe*, 109 Ohio App. 3d at 782.  Corrupt activity is defined in the statute as certain crimes prohibited by law including breaking and entering.  Ohio R.C. § 2923.31(I)(2)(a).  This crime has no *mens rea* requirement apart from that necessary for the underlying crimes.  *See State v. Schlosser*, 79 Ohio St. 3d 329, 335, 681 N.E.2d 911 (Ohio 1997) (holding that "R.C. 2923.32(A)(1) imposes strict liability for commission of the prohibited acts.... As a strict liability offense, no culpable mental state is required."); *Lemaster v. Ohio*, 119 F. Supp. 2d 754 (S.D. Ohio 2000) (The Ohio

RICO statute does not require any specific intent to engage in an unlawful pattern of racketeering.)

After a thorough review of the transcript, the following evidence of record is sufficient to reasonably support a finding that Glavic was guilty beyond a reasonable doubt of violating Ohio R.C. § 2932.32(A)(1).[11]

Detective Barry Witt ("Witt") testified that he investigated a number of break-ins of stores located in Willowick, Ohio and among the primary stolen items were cartons of cigarettes.[12]  (Tr. 42-98.)  Witt executed a warrant upon the apartment of Shawn Dercole ("Dercole") after receiving information from an informant that Dercole had "hundreds of cartons of name brand cigarettes for sale."  (Tr. 74.)  Witt found price lists for cigarettes and notes tracking the number of cartons sold by Dercole.  (Tr. 76-77.)  In addition, Witt found seventeen (17) cartons of cigarettes at Dercole's apartment as well as numerous individual packs of cigarettes.  (Tr. 82-83.)  Dercole testified that during January of 2001, Glavic had brought about 130 cartons of cigarettes over to his apartment along with rolling papers and adult magazines that were from the C-Store.  (Tr. 575.)

---

[11]  After reviewing the transcript, the Court finds that the state appellate court's characterization of the facts is accurate.  The Court undertook its own review as required when a petitioner claims the evidence was insufficient to support a conviction.  *See Nash v. Eberlin*, 437 F.3d 519, 526 (6th Cir. 2006) (remanding habeas petition to district court after the lower court failed to review the transcript with respect to petitioner's sufficiency of the evidence claim).  In *Nash*, the Sixth Circuit instructed the district court to conduct a "review of the full state-court trial transcript."  *Id*. at 525-26.

[12]  Numerous other items were taken during the break-ins such as rolling papers and adult magazines that were also found in Dercole's home in large quantities.  Only one store in the area, the "C-Store", carried all the titles of the magazines found in Dercole's apartment, which was a store that had been broken into.  (Tr. 95-96.)  The C-Store also was the only one in the area that sold the rolling papers found in Dercole's apartment.  (Tr. 97.)

Dercole undertook to sell the cigarettes for Glavic in exchange for a portion of the proceeds.  (Tr. 576.)   Dercole testified at trial that he is a non-smoker.  (Tr. 575.)  One witness testified that Dercole offered to sell her a carton of cigarettes for about half the retail.  (Tr. 99-100.)  Dercole also testified that Glavic had told him that he broke into a Convenient store in Lakeshore, a gas station, and the C-Store.  (Tr. 573, 578, 580.)

Another witness, Joseph Walters, ("Walters") who spoke to Glavic in Lake County Jail testified that Glavic told him he broke into a music equipment store by cutting the phone line and breaking in through the back door.  (Tr. 493.)  Walters further testified that Glavic referred to a certain Lance Watson as his partner and that they had "been doing numerous jobs around the area."  (Tr. 496.)

Sergeant Anthony Iliano ("Iliano") of the Lake County Sheriff's Department testified that he had still photographs printed from the VCR surveillance tape of the Speedway in Perry Township; the photos were enlarged and showed an individual breaking the window with a shovel.  (Tr. 128-138.)  Iliano asserted that after viewing the photos, he recognized the individual in the photo as Glavic, whom he knew from previous encounters.  (Tr. 128.)  Furthermore, Iliano testified that shoe prints obtained from several crime scenes matched a pair of shoes obtained from Glavic's apartment.  (Tr. 138-139.)  David Green, a forensics expert, testified that shoe prints recovered from several crime scenes were made by the same kind of Team Jordan shoe as the one recovered from Glavic's apartment.  (Tr.  522-561.)

Construing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Glavic: committed several breaking and enterings thereby satisfying the two or more predicate acts requirement; was engaged in a criminal enterprise with Watson

and/or Dercole; and the breaking and enterings were related to the enterprise.  Therefore,
Glavic's claim should be dismissed, as there was sufficient evidence to support each element of
his conviction under the Ohio RICO statute.

### V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Glavic's petitions (Doc.
No. 1 & 13) be DENIED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: March 29, 2007

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within ten (10) days of this notice.  Failure to file objections within the specified
time may waive the right to appeal the District Court's order.  *See United States v. Walters*,
638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474
U.S. 1111 (1986).**